STATE OF NORTH CAROLINA v. GREGORY THOMAS STONE

No. 847SC337

(Filed 2 April 1985)

1. **Homicide § 19.1— exclusion of acts of violence by deceased**
    The trial court in a homicide case properly excluded evidence of specific acts of violence committed by the victim where defendant had introduced no evidence of self-defense or defense of others.

2. **Homicide § 21.7— second-degree murder—sufficiency of evidence**
    The State's evidence was sufficient for the jury in a prosecution of defendant for second-degree murder where it tended to show that defendant was awakened by the screaming and shouting of his sister and the victim in another room; defendant procured a rifle and entered the bedroom of his sister and the victim with the rifle in his possession; upon entering the room, defendant pointed the gun at the victim and shot him; the victim was not in possession of a weapon when he was shot; defendant then left in a truck and eventually threw the rifle over a bridge; and defendant told his girl friend that he had shot the victim.

3. **Homicide § 28.5— instructions on defense of others—use of "self-defense"**
    Defendant was not prejudiced by the trial court's use of the term "self-defense" at different times in its instructions on defense of others.

APPEAL by defendant from *Small, Judge.* Judgment entered 3 November 1983 in Superior Court, NASH County. Heard in the Court of Appeals 9 January 1985.

Defendant was charged in a bill of indictment with the first degree murder of Shelton Gay. The State proceeded on the charge of second degree murder. The court submitted four possible verdicts to the jury: (1) guilty of murder in the second degree, (2) guilty of voluntary manslaughter, (3) guilty of involuntary manslaughter, or (4) not guilty. The jury found the defendant guilty of second degree murder, whereupon the court imposed the presumptive sentence of fifteen years imprisonment. Defendant appeals.

The evidence for the State tended to show the following: Defendant shared a home with his sister, Lisa Stone, and the victim, Shelton Gay, who was Lisa's boyfriend. On 20 August 1983, defendant attended a pig picking at Lake Royale. Defendant was accompanied by a friend, Tammy Narron, and Lisa while Gay arrived at the pig picking later in the day. Defendant and Gay were both drinking at the pig picking, but no trouble ensued between the two. Defendant, Tammy Narron, and Lisa left the pig picking to go to a tavern in Middlesex, North Carolina known as Rebel's Lounge. They were not accompanied by Shelton Gay, who elected to stay at the pig picking. After staying at the tavern for a short time, they returned to defendant's home. Defendant and Tammy Narron remained at the house, but Lisa returned to the tavern with three other individuals where she stayed until sometime between 12:00 midnight and 1:00 a.m., at which time she returned home and went to sleep.

Shelton Gay returned to the house about 2:30 a.m., whereupon he entered the bedroom and grabbed Lisa Stone. He questioned her as to her whereabouts earlier in the evening and whom she was with. Not satisfied with her response, he slapped her and threw her down on the floor. An argument ensued between the two, which resulted in the two yelling and screaming at one another. As a result of the yelling and screaming, defendant was awakened from his sleep. Defendant heard Lisa crying and screaming for Shelton Gay to leave. Defendant then got out of bed, looked on the dresser and around the room for a pistol. Not finding the pistol, defendant procured a rifle which was located in

a gun rack in the den of the house. Defendant entered Lisa's bedroom with the gun down by his side. Shelton Gay was positioned beside Lisa near the bed. Upon entering the room, defendant pointed the gun at Shelton Gay and shot him. There was also evidence that the defendant never saw Shelton Gay with a weapon in his hand.

After shooting Shelton Gay, defendant exited Lisa's room and returned to the bedroom occupied by Tammy Narron. Tammy Narron questioned defendant as to what happened. Defendant responded, "I shot that son-of-bitch, Shelton." Defendant, after putting on a shirt, and Tammy Narron left the house by truck and just started driving. After driving for a while, they stopped at a first bridge, but proceeded on. At a second bridge, defendant got out of the truck and threw the rifle over the bridge. They proceeded on to Wilson, N.C. at which time defendant telephoned his sister, Rhonda, who lived beside the defendant in Middlesex. Questioned by Tammy Narron about the condition of Shelton Gay, defendant responded that he was "deader than hell." Defendant returned to Nash County and turned himself in to the Sheriff's Department.

Defendant's evidence leading up to the events transpiring in the bedroom tends to be in agreement with the State's evidence. Defendant's evidence further showed that from the commotion occurring in Lisa's bedroom, he could tell someone was turning over "stuff in the room" and that his sister was being beaten. Defendant was concerned for his sister's safety, therefore he decided to find his pistol before entering the room. He could not locate the pistol, but was aware that Shelton Gay knew where the pistol was kept. Defendant took the rifle down from the gun rack and entered the bedroom with the gun pointed down by his side. Upon entering the room, he saw his sister's face was bleeding and her shirt was torn. Shelton Gay was standing next to Lisa and looked as though he was about to grab her, when he suddenly moved towards the defendant. Defendant stepped back bringing the rifle up and shooting Shelton Gay in the chest.

*Attorney General Rufus Edmisten, by Special Deputy Attorney General Charles J. Murray, for the State.*

*C. Ray Joyner, for defendant appellant.*

JOHNSON, Judge.

Defendant's initial contention is that the trial court erred in excluding evidence of specific acts committed by the victim which would have shown that the victim had a propensity for danger and violence. This assignment is not supported by an exception duly taken at trial and therefore presents no question for appellate review. *State v. Green*, 280 N.C. 431, 185 S.E. 2d 872 (1972); Rule 10, Rules of Appellate Procedure. Nevertheless, upon examination of the record, we find the exclusion of defendant's evidence proper.

[1] Defendant contends the trial court excluded evidence that the victim, on prior occasions, had violently knocked holes in the walls of his bedroom and had violent arguments with his girl-friend who was the defendant's sister. In a criminal prosecution for homicide, if there is a proper showing that the accused may have acted in self-defense or some comparable justification, evidence of specific acts of violence committed by the victim is admissible. *State v. Johnson*, 270 N.C. 215, 154 S.E. 2d 48 (1967); 1 Brandis, N.C. Evidence sec. 106 (rev. ed. 2d). However, as a condition precedent to the admissibility of such evidence, the defendant must first present viable evidence of the necessity of self-defense. *State v. Allmond*, 27 N.C. App. 29, 217 S.E. 2d 734 (1975). This logically extends to defense of others, which was defendant's justification in the case *sub judice*. At the time defendant sought to elicit the excluded evidence, he had introduced no evidence as to the defense of others. No evidence having been presented, the court did not err in sustaining the objections to the inquiries in question. *See State v. Green*, 62 N.C. App. 1, 301 S.E. 2d 920, *affirmed; modified on other ground*, 309 N.C. 623, 308 S.E. 2d 326 (1983).

[2] Defendant's second contention cites as error the trial court's denial of his motion to dismiss the charge of second degree murder. On a motion to dismiss, the evidence is considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom. *State v. Simmons*, 57 N.C. App. 548, 550, 291 S.E. 2d 815, 817 (1982). Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal. *State v. Gray*, 56 N.C. App. 667, 672, 289

S.E. 2d 894, 897, *disc. rev. denied*, 306 N.C. 388, 294 S.E. 2d 214 (1982).

When considered in light of the foregoing principles, we hold the State's evidence was sufficient to withstand a motion to dismiss. The State's evidence tended to show that the defendant was awakened by screaming and shouting by his sister and the victim in another room. Defendant then searched for his pistol in his bedroom, but not finding the pistol took down a rifle from a gun rack in the den. Defendant entered the bedroom of his sister and the victim with the gun in his possession. There was evidence that the victim was not in possession of a weapon when the gun in the possession of the defendant went off and killed the victim. Upon being questioned about the series of events, defendant responded, "I shot that son-of-a-bitch, Shelton." Defendant then left in a truck and eventually threw the rifle over a bridge. The trial court properly denied defendant's motion to dismiss.

[3] Defendant's final contention is that the trial court erred in instructing the jury on defense of others. Again, defendant has failed to comply with the Rules of Appellate Procedure. No party may assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection. Rule 10(b)(2), Rules of Appellate Procedure. Defendant did not object to the jury instructions during the trial proceedings, thus is prevented from raising it on appeal.

Nevertheless, we have reviewed the jury instructions and find defendant's contention is without merit. The trial court instructed the jury pursuant to the North Carolina Pattern Jury Instructions. N.C.P.I. Crim. 308.60, "Killing In Lawful Defense of a Family Member." Defendant cited the trial court's use of the term "self-defense" at different times of the instructions as error. We find that so overbalanced was the charge on the defense of others, that the jury was not misled by the infrequent mention of the term "self-defense." Taken as a whole, we find no prejudicial error in the jury instructions as given.

No error.

Judges BECTON and MARTIN concur.